09-1380-pr
Snyder v. Whittier

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 1st day of July, two thousand eleven.

Present:      ROSEMARY S. POOLER,
             RICHARD C. WESLEY,
             DEBRA ANN LIVINGSTON,
                      *Circuit Judges.*

_____

SHAWN MICHAEL SNYDER,

                              *Plaintiff-Appellant*,


      -v.-                                                      09-1380-pr


BERNARD F. WHITTIER,

                              *Defendant-Appellee*,

COMMISSIONER GLENN S. GOORD, RICHARD ROY, INSPECTOR GENERAL, MARK MILLER, ASSISTANT INSPECTOR GENERAL, JAMES PLESCHIA, SUPERINTENDENT, and MR. FUNNYE,
                              *Defendants*.[1]

_____

_____

   [1]  The Clerk's Office is instructed to conform the caption herewith.

Appearing for Appellant:    Scott A. Korenbaum, Law Office of Scott A. Korenbaum, New York, NY.

Appearing for Appellee:    Michael S. Martin, The Law Offices of Martin & Martin, Glens Falls, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**ON CONSIDERATION WHEREOF**, **IT IS HEREBY ORDERED**, **ADJUDGED**, **AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Plaintiff-Appellant Shawn Michael Snyder appeals from a judgment entered on March 12, 2009, in the District Court for the Northern District of New York (McAvoy, *J.*), adopting the Report and Recommendation of Peebles, *M.J.*, granting Appellee's motion for summary judgment on the ground that Appellant failed to exhaust administrative remedies before filing suit. We assume the parties' familiarity with the underlying facts, procedural history, and issues presented for review.

We review an order granting summary judgment de novo to determine whether the district court properly concluded that there were no genuine issues of material fact and the moving party was entitled to judgment as a matter of law. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). "In determining whether there are genuine issues of material fact, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted). A district court's ruling on whether a plaintiff has exhausted administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, is also reviewed de novo. *See Ortiz v. McBride*, 380 F.3d 649, 653 (2d Cir. 2004). We may affirm on any ground supported by the record, including a ground not relied upon by the district court. *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir. 1999).

Appellant Shawn Michael Snyder alleges that, on the afternoon of June 1, 2005, he was physically and verbally assaulted by Bernard F. Whittier, a corrections officer, who was "notoriously homophobic." It is undisputed that Snyder did not file a formal grievance regarding the assault until the time for grieving the assault had long since passed. Snyder filed the instant action, arguing in relevant part that he ought to be excused from exhausting administrative remedies, or in the alternative, Whittier ought to be estopped from raising exhaustion as an affirmative defense.

The PLRA requires that prisoners exhaust all available administrative remedies before pursuing a lawsuit in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (exhaustion is required for "all inmate suits about prison life"); *Booth v. Churner*, 532 U.S. 731, 734 (2001) (exhaustion required before filing a Section 1983 claim for monetary damages even though monetary damages are unavailable as an administrative remedy). To properly exhaust a claim, a prisoner must comply with prison grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (internal quotation marks and citation omitted). An "untimely or otherwise procedurally defective administrative grievance" also does not constitute proper exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).

Though the exhaustion requirement is generally mandatory, we have devised a three-part inquiry to determine the scope of the exhaustion requirement in a given case. First, "the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (citing *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). This includes inquiry into both whether "the prison provided grievance procedures that inmates . . . could utilize" and whether threats rendered "all administrative remedies unavailable" or "some procedures that would ordinarily be available . . . effectively unavailable." *Id.* at 686-87. Second, the court should determine whether the defendants forfeited the defense by failing to raise or preserve it and whether the defendants' actions inhibiting the inmate's exhaustion of remedies would estop the defendants from raising the failure to exhaust defense. *Id.* at 686. Finally, the court "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" *Id.* (quoting *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004)).

In this case, Snyder testified that he was "fearful of filing a grievance" about the assault because he was worried about retaliation from Whittier. Independent of Snyder's alleged subjective fear here, we noted in *Hemphill* that the inquiry into whether a threat is sufficient to render grievance procedures unavailable is an objective one, asking whether "'a similarly situated individual of ordinary firmness' [would] have deemed them available." *Hemphill*, 380 F.3d at 688. Here, however, Snyder fails to allege any specific threats related to the grievance procedures that would have led any such similarly situated individual to believe that these procedures were unavailable. Moreover, while Snyder's subjective fear is thus not dispositive, it is nonetheless relevant that two hours after the assault, Snyder complained to Corrections Officer Funnye, who Snyder testified was friendly with Officer Whittier. That is, Snyder alleged that two hours after the attack, he overheard Officer Whittier "bragging to Defendant Funnye about [the assault]" and observed Officer Funnye "approve[] Defendant Whittier's actions by expressing that 'the bitch probably deserved it,' and both Defendants . . . joking and laugh[ing] about the incident." Notwithstanding any fear about filing a grievance, Snyder complained to Officer Funnye about the attack within minutes of the above exchange.

Further, Officer Funnye was not the only person Whittier told about the attack. Snyder disclosed certain limited details to his physician. Snyder wrote a letter to Lieutenant Greene, another officer at the Washington Correctional Facility, where the assault took place, on July 7.

-3-

In response to the letter, Sergeant Belden requested that Snyder give him a formal statement, which Snyder provided on July 12. Indeed, Snyder was even transferred out of the Washington Correctional Facility to the Great Meadow Correctional Facility and eventually to the Groveland Correctional Facility, in response to his complaints about Officer Whittier.

Once Snyder arrived at Groveland, he wrote a letter to the Inspector General about the incident, which he mailed on July 22, 2005. Failing to receive a response to that letter, Snyder sent a second request for information on August 23, 2005.

It is true that depending on the circumstances, a court may determine that an inmate was objectively sufficiently intimidated, by certain prison officials so as to render "normal grievance procedures unavailable" even though the inmate informally complained "directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Hemphill*, 380 F.3d at 688. But that situation is not present here. Snyder cannot contend that a similarly situated individual of ordinary firmness would be willing to complain above Whittier's head, but unwilling to file a formal grievance for fear of Whittier, where Snyder's first complaint was made to Funnye, Whittier's fellow corrections officer.

In granting the motion for summary judgment on the ground that Snyder failed to exhaust available administrative remedies, the Magistrate Judge explained that: "Plaintiff's contention that he did not file a grievance at Washington concerning the matter out of fear of retribution is fatally undermined by the fact that while he was transferred out of Washington and into Groveland on July 15, 2005, it was not until more than one month later, on August 24, 2005, that he first attempted to file a grievance regarding the matter." The delay in filing an official grievance is not helpful to Snyder, but it would not necessarily have negated a finding that there was a triable question of fact regarding whether Snyder really did avoid filing a formal grievance as a result of threats sufficient to deter a person of ordinary firmness from resorting to the grievance procedures. The facts of this case, however, do not present such a close call.

Again, the facts here simply do not demonstrate threats by Whittier targeted at preventing Snyder from filing a formal grievance so as to make these procedures "effectively unavailable" for an inmate in Snyder's position or otherwise to estop Whittier from raising the exhaustion defense. Snyder's assertion that he feared retaliation in the first place from Officer Whittier is belied by his testimony that he complained to Officer Funnye within two hours of the assault, and immediately after he had watched Officers Funnye and Whittier "joke" and "laugh" about the incident. Our conclusion is further underscored by the fact that Snyder complained to no less than four other individuals about the attack, between the time he disclosed details of the attack to Officer Funnye, and the time when he finally attempted to file a formal grievance. These undisputed facts make clear that there is no basis on which a fact-finder could conclude that Officer Whitter inhibited Snyder's access to administrative remedies, or that administrative remedies were otherwise unavailable to Snyder. Where, as here, a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). We therefore conclude that the district court committed no error in granting summary judgment for Whittier.

We have considered Snyder's remaining contentions and find them to be without merit for substantially the reasons stated by the district court. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk